# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CR-13-00062-001-HE |
| ) | NO. CIV-14-0866-HE |
| ELIAS VEGA AMADO, ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

Defendant Elias Vega Amado moved for habeas relief pursuant to 28 U.S. C. § 2255 based on ineffective assistance of counsel, following a guilty plea for possession of methamphetamine with intent to distribute and illegal reentry into the United States after deportation. He was sentenced to 240 months imprisonment on the possession count and 120 months on the reentry count, to be served concurrently, plus five years of supervised release. Defendant did not appeal his conviction or sentence. The court rejected all but two of defendant's ineffective assistance claims. *See* May 28, 2015, Order [Doc. #73]. It concluded an evidentiary hearing was needed to resolve the remaining claims. A hearing was held on August 7, 2015, at which defendant was present, along with appointed counsel. After careful consideration of the evidence presented at the hearing, along with the arguments of counsel, the court concludes defendant's request for habeas relief should be denied.[1]

Defendant asserted in his § 2255 motion that his trial counsel was ineffective because he failed to file a motion to suppress challenging the search of his vehicle and house. As part

---

[1]*The court commends appointed counsel for her representation of defendant and efforts on his behalf.*

of this argument, he claimed defense counsel should have investigated certain discrepancies in the reports of the two police officers who arrested him. Defendant also contended that his attorney failed to file an appeal on his behalf, despite his request immediately following his sentencing and the requests of his family members.

To succeed on an ineffective assistance of counsel claim, a defendant "must show both that his counsel's performance 'fell below an objective standard of reasonableness' *and* that 'the deficient performance prejudiced the defense.'" Byrd v. Workman, 645 F.3d 1159, 1167 (10th Cir. 2011) (quoting Strickland v. Washington, 466 U.S. 668, 687–88 (1984)). To establish prejudice a defendant "must establish that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.* at 1168 (internal quotation marks omitted). Courts can "address these two prongs in any order, and failure under either is dispositive." *Id.*

## Background

Some background information is needed to put the motion in context. The police reports from defendant's arrest, Government Exhibits 1, 2, reflected that, on January 1, 2013, Oklahoma City Police Officers Grimes and Paull were dispatched in response to an early morning telephone call to an address in southwest Oklahoma City. The caller said a neighbor was yelling and breaking stuff inside his house. When they arrived at approximately 5:30 a.m., they observed a Hispanic male (defendant) walking out of the house, which appeared to have been ransacked. The screen door was damaged and there was broken glass, along with children's toys on the front porch. A jeep wrangler was parked in front of the house

2

with the rear driver's side door open. Defendant appeared to be putting his personal items in the vehicle. Officer Paull asked defendant to speak with Officer Grimes while he "cleared the house" or conducted a protective sweep. Gov. Ex. 2. Because of the condition of the house, the officer was concerned for the safety of any children or other people who might be living there. No one else was present.

The reports indicate that while Officer Paull checked the house, defendant consented to a pat down for weapons. Officer Grimes had noticed a pocket knife in defendant's shirt pocket. In the process of conducting the pat down, defendant asked Officer Grimes to put some items he was holding in his hands in the jeep. When the officer put the items in the vehicle, he observed two bags with large amounts of cash inside. Officer Grimes found three amounts of U.S. currency while searching defendant: $180 in one pocket, $440 in another and $4000 in a third pocket banded in rubber bands.

After Office Paull returned from the house he took defendant, who was very intoxicated, to his vehicle. The reports indicate Officer Grimes then returned to the jeep and looked inside with his flashlight. He saw items wrapped in duct tape within a sack and concluded, based on his training, that they were drugs or money. He removed one of the items, cut a corner off and saw a large stack of twenty dollar bills. He returned it to the vehicle and saw another plastic bag next to the sack. In it was another item wrapped in duct tape, which he removed and opened. He observed a crystal like substance which later field tested positive for crystal methamphetamine. Defendant was arrested on state drug trafficking charges and the jeep was impounded. Search warrants were subsequently

3

obtained for both the house and vehicle.[2]

The following was established at the evidentiary hearing. Edward M. Blau was retained to represent defendant on the state charges. He met with defendant and, with the assistance of an interpreter, went over the police reports with him line by line. Defendant disputed several things that were in the report. Mr. Blau concluded there was a possible basis for moving to suppress the evidence that had been seized from the vehicle and discussed the filing of a suppression motion with defendant. Before a preliminary hearing was held in state court, defendant was indicted on federal charges.

When Mr. Blau met with the Assistant United States Attorney ("AUSA") assigned to defendant's case, he advised the AUSA of his doubts about the validity of the vehicle search. He was principally concerned about how the officers were able to see the contraband in the jeep. The AUSA informed Mr. Blau that he would contact the arresting officers and attempt to clarify the information in their reports.[3] They met again and the AUSA advised Mr. Blau that there was additional information pertinent to the search of defendant's vehicle. He told Mr. Blau that he had learned that when the officers looked in the jeep the money was readily visible,[4] that it was spilling out of the bags and they could recognize it immediately as currency. He was also informed that the officers could also see and recognize through the

---

[2]*The warrants, if based on an illegal search of the vehicle, would be invalid.*

[3]*Mr. Blau testified that police reports did not always contain all the relevant information relating to an incident. He said it was not unusual during motion to suppress hearings for additional facts to come out that were not included in the arresting officers' reports.*

[4]*It was not disputed that the jeep door was open.*

4

open door, based on the packaging, what was later determined to be methamphetamine. In the same conversation the AUSA informed Mr. Blau that Officer Paull would testify at a suppression hearing that, during his protective sweep of the house,[5] he saw scales, baggies and other items that his training and experience led him to recognize as being consistent with the packaging of illegal narcotics.

Mr. Blau testified that he had been engaging in plea discussions with the government and had been told by the AUSA that if defendant pled guilty it was likely that the § 924(c) count[6] charged against him would be dismissed and the government would recommend that the state charges be dropped. He testified that defendant's willingness to waive his Fourth Amendment challenge was a factor in the plea negotiations. Mr. Blau testified that he made the strategic decision to recommend foregoing the filing of a motion to suppress and to continue with the plea process. The decision was based on the favorable plea terms that were offered, combined with his assessment of the chances of a suppression motion being granted, after he received the additional information from the AUSA regarding the circumstances surrounding the search of defendant's vehicle – both the currency and contraband being in plain view – and what Officer Paull had seen in the house.[7]

---

[5]*Defendant confirmed during his testimony at the hearing that Officer Paull was in the house for only one to two minutes, which is consistent with the amount of time needed to conduct a protective sweep.*

[6]*18 U.S.C. § 924(c). A § 924(c) count carries a five-year mandatory minimum sentence, in addition to the sentence for the related drug crime or crimes of violence.*

[7]*If the currency was spilling out of the bags and the drugs were readily identifiable because of its packaging and they could be seen through the vehicle's open door (all of which defense*

5

For counsel's actions to rise to the level of constitutional ineffectiveness, his strategic decisions must have been 'completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy.'" Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000) (quoting Hatch v. Oklahoma, 58 F.3d 1447, 1459 (10th Cir.1995)). Defendant's submissions fell significantly short of meeting this standard. He has not shown that Mr. Blau's decision not to file a motion to suppress was unreasonable, much less completely unreasonable. Defendant received a substantial bargain, dismissal of three counts, including one that carried a consecutive five year mandatory minimum sentence, plus the dismissal of the state charges, in exchange for his guilty plea. His attorney's decision to pursue those concessions in light of the improbability of success on a motion to suppress reflects the "exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.[8] Defendant is not entitled to habeas relief on the ground that his counsel failed to file a motion to suppress the evidence seized from his vehicle and house.[9]

The remaining issue essentially presents a question of credibility. Defendant claims that, during the brief meeting he had with Mr. Blau after his sentencing, he told him he wanted to appeal. He said he did not expect such a lengthy sentence because Mr. Blau had

---

*counsel had been advised the police officers would testify to at a suppression hearing), then the contraband was in "plain view" and the officers had probable cause to search the jeep.*

*[8]As defendant did not satisfy the first prong of Strickland, there is no need to consider the second.*

*[9]In his motion defendant had also argued that there were discrepancies in the police officers' reports. The court concludes the differences between the two reports were minor and not such as would justify questioning their substantial accuracy.*

6

told him he could get a lesser sentence. Defendant testified that Mr. Blau told him he could not appeal because he had signed an appeal waiver. Defendant also stated that he asked his cousin Julio to call Mr. Blau and tell him he wanted to appeal and that Julio reported back that he had contacted Mr. Blau and was told that defendant could not appeal, that he would get more time. Defendant said he also asked other family members to call Mr. Blau and they attempted to reach him, but their calls were not returned and that he, personally, sent letters to Mr. Blau, which went unanswered.

Mr. Blau testified that all defendant asked him to do, when they met after he was sentenced, was to speak with his family. He did not, Mr. Blau stated, ask him to file an appeal that day, and no family members reached out to him to file an appeal for defendant.

The court found both defendant and Mr. Blau to be credible witnesses. However, taking into consideration the motivations each had to tell the truth and the lack of admissible evidence from any of the family members defendant claims contacted or attempted to contact Mr. Blau on his behalf, the court concludes defendant has not met his burden of establishing that defense counsel disregarded his request to file an appeal from his conviction and sentence. Defendant is not entitled to habeas relief on the ground that his counsel failed to file an appeal.

Accordingly, for the reasons stated here and in the court's May 28, 2015, Order [Doc. #73], defendant's § 2255 motion is **DENIED** with respect to all his claims. The court also **DENIES** a certificate of appealability, as it finds petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

7

**IT IS SO ORDERED**.

Dated this 12th day of August, 2015.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE